UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMES A. BLUNT,

        Plaintiff,

v.

R. BATHO et al.,

        Defendants.

_____/

Case No. 2:22-cv-13

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 7.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4, PageID.21.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted.

## Discussion

**I.     Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Resident Deputy Warden R. Batho, Resident Unit Manager T. Corey-Spiker, Resident Unit Manager Arthur Derry, Corrections

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Officer Unknown Otto, the Chippewa Correctional Facility (URF), Hearings Officer Unknown O'Brien, Counselor Unknown Vollick, and the Michigan Department of Corrections (MDOC).

Plaintiff reports that shortly after he arrived at URF, a prisoner threatened Plaintiff, twice.[2] Plaintiff refused to identify the prisoner. (Misconduct Hr's Report, ECF No. 1-1, PageID.14.) In his amended complaint (ECF No. 9), Plaintiff alleges that on an unspecified date, Defendants Batho and Corey-Spiker denied his request for protective custody despite Plaintiff's concerns for his safety. Plaintiff informed Defendant Vollick of the denial and that Plaintiff had been threatened again, but Defendant Vollick told Plaintiff that he needed to be a man at some point and to go to chow hall. Plaintiff subsequently disobeyed a direct order by Defendant Otto to return to his cell and was sent to administrative segregation.

During the hearing, Plaintiff explained the situation to Defendant O'Brien, but she was dismissive and found Plaintiff guilty of disobeying a direct order to return to the general population. Plaintiff wrote a grievance regarding the refusal to take his request for protection seriously, but Defendant Derry, who investigated the grievance, took the side of Defendants Batho and Corey-Spiker.

Plaintiff states that he received five misconducts for disobeying a direct order because he refused to return to the general population and that this likely resulted in the denial of parole. Plaintiff seeks to be released on parole. Plaintiff also seeks damages.

---

[2] Plaintiff alleges that "dates and places are supported in my relevant documents already on file" (Am. Compl., ECF No. 9, PageID.65.) The only relevant documents on file are the grievance and misconduct documents that Plaintiff attached to his original complaint. Accordingly, the Court relies on those documents and the information contained therein to illuminate Plaintiff's otherwise scant allegations.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **Release on parole**

Plaintiff's action seeks release from custody on parole. That relief is available only upon habeas corpus review. "The Supreme Court has held that release from confinement—the remedy petitioner[ ] seek[s] here—is 'the heart of habeas corpus.'" *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). The Supreme Court has concluded that actions that lie "within the core of habeas corpus" are an "implicit exception from § 1983's otherwise broad scope." *Wilkinson*, 544 U.S. at 79 (internal quote marks omitted).

    **B.**    **A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.** *See Preiser*, **411 U.S. at 484 (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Plaintiff's complaint necessarily challenges the fact or duration of his incarceration in that he seeks release on parole. To that extent, the complaint must be dismissed.** *See Adams v. Morris*, **90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement). Defendants URF and MDOC**

Plaintiff names URF and the MDOC as Defendants in this case. URF is not a separate entity capable of being sued. As this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit" *Id*. at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county . . . ."); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued. Rather, it is a building owned by the Michigan Department of

6

Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Moreover, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). And, obviously, because URF is not an entity separate from the MDOC, it is not a "person" under § 1983 either. *See*, *e.g.*, *Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same).

To the extent that Plaintiff names the MDOC as a Defendant, and even if the MDOC was a person under § 1983, Plaintiff's claim would be properly dismissed because the MDOC is immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by

7

statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For all of these reasons, Plaintiff's claims against Defendants URF and MDOC are properly dismissed for failure to state a claim or, alternatively, on grounds of immunity.

### C. Defendant Derry

Plaintiff alleges that he wrote a grievance regarding the refusal to take his request for protection seriously, but Defendant Derry, who investigated the grievance, took the side of Defendants Batho and Corey-Spiker.

Essentially, Plaintiff asks the Court to impose liability on Defendant Derry for the actions of Batho and Corey-Spiker. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Defendant Derry's actions in denying a grievance is not a constitutional violation. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Derry's conduct did not deprive him of due process.

Nor was Plaintiff's right to petition the government violated by Defendant Derry's asserted failure to properly investigate his grievance. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendant Derry's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to

9

assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Derry.

### D. Due process

Plaintiff states that he received five misconducts for disobeying direct orders to return to the general population, but he only alleges specific facts with regard to one of those misconducts. Under MDOC Policy Directive 03.03.105B, (eff. Apr. 18, 2022), a misconduct for disobeying a direct order is a class II misconduct. Defendant Otto wrote the misconduct report as a class II misconduct. (*See* Misconduct Report dated January 15, 2022, ECF No. 1-1, PageID.8.) But the

10

MDOC Policy Directive 03.03.105A, (eff. Jul. 18, 2022), regarding class I misconducts, provides that a class II misconduct may be elevated to a class I misconduct by the reviewing officer. If the officer so elevates the misconduct, the officer is required to change the first digit of the misconduct code from a "4" to a "0." *Id*.

Plaintiff attached a copy of the misconduct hearing report related to the January 15, 2022, disobeying a direct order ticket to his original complaint. The report shows that Defendant O'Brien conducted a class I misconduct hearing, and assigned the misconduct code of "020" to the offense. (Class I Misconduct Hr'g Report, ECF No. 1-1, PageID.14.)[3] Moreover, the sanction ordered—10 days detention—is only available for a class I misconduct. MDOC Policy Directive 03.03.105D, (eff. Apr. 18, 2022). Accordingly, the Court concludes that Plaintiff was found guilty of a class I misconduct with all of the procedural protections typically afforded the more serious offense.

In the "Evidence/Statements" section of the hearing report, Defendant O'Brien stated:

The hearing is conducted via Video Teleconferencing. Unless otherwise noted, documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his refusal of the hearings investigator, and Misconduct Screening Form. Prisoner Blunt states he needs protection and SCC refuses to give him it. When asked he said he was threatened on the way back from dinner chow on Christmas by a guy he refused to identify saying he had done something to a friend and he was warning him to get off the yard or he would be harmed, he went and immediately reported it to staff, he went to segregation and SCC denied his request for protection so he went back out, he said the day after he

---

[3] Plaintiff attaches two misconduct hearing reports to the initial complaint. The misconduct hearing report dated January 19, 2022, (ECF No. 1-1, PageID.14), was the hearing on the misconduct written by Defendant Otto. The misconduct hearing report dated January 5, 2022, (ECF No. 1-1, PageID.15), was the hearing on a misconduct written by Officer Moon. Officer Moon is not named as a defendant in Plaintiff's amended complaint. Thus, it appears that Plaintiff is no longer raising claims based upon the Moon misconduct. Nonetheless, the two misconduct reports were virtually identical and the hearing reports regarding the misconducts were virtually identical as well. For that reason, any claim Plaintiff might have against Officer Moon would simply parallel his claim against Defendant Otto. Similarly, any claim Plaintiff might have against Defendant O'Brien regarding the hearing on the misconduct written by Officer Moon would be resolved the same way as Plaintiff's claims against O'Brien regarding the hearing on the misconduct written by Defendant Otto.

> went to the unit on the way to chow he again was approached by the same prisoner who he will not identify and said why are you here I gave you a warning, he said nothing but walked towards control center, he was met by the PC who he explained [sic] and was told to go to the chow hall sergeant, he went there and told the sergeant and he said to talk to the yard sergeant and he was went out [sic] but was stopped by an officer who told him to go to control and he did and locked up but SCC again refused him. Prisoner has nothing further to add. No further evidence is needed. Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

(Class I Misconduct Hr'g Report, ECF No. 1-1, PageID.14.) In the "Reasons for Findings" section, Defendant O'Brien states:

> Officer Otto gave a direct and reasonable order to Prisoner Blunt to return to general population on 1-15-22 at 0707 hrs. Prisoner Blunt heard and understood the order because he replied "No." Prisoner Blunt did not comply. The order was capable of being performed, did not pose a significant risk of substantial harm and did not conflict with a prior order. Prisoner Blunt's statement is not believed because if he truly was threatened twice by a guy he would have identified him at least the second time because it makes no sense he would want to risk being on the yard with this guy even at new facility if he truly feared him and without identifying the prisoner threatening him he risks even if he is allowed to change facilities he could be placed at the same facility as this guy who could harm him before he even knew he was on the same yard. Since he refuses to identify the guy when he had to know this could happen in the future if he does not do so, it is not believed he was threatened or in fear for his life. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

(*Id.*)

Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

12

Plaintiff's misconduct conviction did not affect the duration of his sentence. The MDOC reward for serving "good time" has changed significantly over the last 25 years. For years inmates could earn "good time credits." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.33. For prisoners who committed crimes on or after April 1 of 1987, however, "good time credits" were discontinued and replaced by "disciplinary credits." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.33. Then, for prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, "disciplinary credits" were replaced by "disciplinary time." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.34.

Plaintiff is serving a sentence imposed on September 30, 2020, for an offense he committed on July 4, 2020. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx? mdocNumber=252203 (last visited Sept. 9, 2022). He is subject to disciplinary time, not good time credits or disciplinary credits. "The 'disciplinary time' . . . accrued for his major misconduct is simply a record that will be presented to the parole board to aid in its determination . . . it is not something that affects the length of . . . sentence or . . . eligibility for parole." *Taylor*, 418 F. App'x at 412; *see also Thomas v. Eby*, 481 F.3d 434, 439–40 (6th Cir. 2007). Therefore, the misconduct conviction falls outside the protection *Sandin* would afford hearings that impact the duration of confinement.

Moreover, the potential punishments that follow conviction of a major misconduct—"detention . . . not to exceed 10 days [or] . . .[t]oplock, not to exceed 30 days [and] [l]oss of privileges, not to exceed 30 days [and] [r]estitution . . ."—do not impose atypical and significant hardships in relation to the ordinary incidents of prison life. *See, e.g., Powell v. Washington*, 720 F. App'x 222, 225 (6th Cir. 2017) ("Powell failed to state a claim for a due-

13

process violation because his detention in administrative segregation did not impose an atypical and significant hardship . . . ."); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) ("'plaintiff's placement in administrative segregation was not an atypical and significant hardship, as intended by Sandin . . . .'") (quoting *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995)). Therefore, Plaintiff's major misconduct hearing did not implicate the due process protections *Sandin* identified for disciplinary proceedings that might create unusual hardships.

But, even if Plaintiff were entitled to due process protection, he could not state a claim for a due process violation because he received all of the process he would have been due. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court established minimum procedures for a prisoner facing a disciplinary proceeding that would impact the duration of his confinement. The *Wolff* Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563–69. Plaintiff does not allege facts that support an inference that he was denied any of the minimal procedures required if, and when, there is an interest protected by due process.

For all of these reasons, Plaintiff has failed to state a claim for violation of his due process rights.

### E. "Judicial" immunity

Defendant O'Brien is immune from suit because Plaintiff's claims against her related solely to her actions as a hearing officer. Defendant O'Brien is employed by the MDOC as a hearing officer whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a

14

special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *see also Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017); *Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554–55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivations of civil rights).

### F. Defendants Batho, Corey-Spiker, and Vollick

Plaintiff claims that Defendants Batho, Corey-Spiker, and Vollick denied him protection in violation of the Eighth Amendment. Plaintiff filed grievances regarding the denial of his request for protective custody. In Grievance URF-22-00-03-03B, Plaintiff stated that the SCC had denied his request for protection after he reported fearing for his life as the result of another inmate accusing Plaintiff of telling on an inmate who had a secret relationship with a staff member at AMF and telling Plaintiff to get off the yard. (ECF No. 1-1, PageID.9.) Plaintiff filed a second grievance on January 3, 2022, in which he accuses Defendant Batho of taunting him during his SCC interview by saying "you're scared, you're scared." (*Id.*, PageID.10.) The grievances were investigated:

> Institutional records indicate Blunt arrived from LRF 12/21/21 and was placed in Round Unit. On 12/24/21 he requested protection and was seen by SCC on 12/27/21, his request was denied and he was release[d] to level IV. On 12/28/21

15

> Blunt refused to lock in Round Unit level IV and was written a Disobeying a Direct Order. The bond was revoked and he was placed in Steamboat on Temp Seg. He was found guilty on 1/5/22 and given 10 days Detention. On 1/6/22 SCC seen [sic] Blunt and he stated he wrote SCC up and will not go back to Level IV Round Unit.

(*Id.*, PageID.9-10.) As noted above, Plaintiff's claim that he was unfairly denied protection was investigated in preparation for his misconduct hearing. Plaintiff's claim was found to be not credible because of his refusal to identify the inmate who had warned him to get off the yard.

Among the protections of the Eighth Amendment, inmates have a constitutionally protected right to personal safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Nevertheless, "[a]lthough 'prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners,' it is equally clear that not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials.'" *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 833–34 (citations and internal quotation marks omitted)). In order to state a failure-to-protect claim, a plaintiff must demonstrate (1) that he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Reedy*, 988 F.3d at 912 (quoting *Farmer*, 511 U.S. at 829, 834, 847); *see also Greene v. Bowles,* 361 F.3d 290, 293–94 (6th Cir. 2004) (addressing whether knowing placement of a small, transgender female in a unit with a known predatory inmate amounted to deliberate indifference). In establishing the objective prong, although a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal-safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29 F.3d 238,

16

242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Under the circumstances alleged in the complaint, Plaintiff fails to show an objectively justifiable or reasonable fear for his personal safety. Plaintiff's allegations regarding a threat to his safety are vague and conclusory. But, more importantly, the hearing officer determined, in two major misconduct proceedings, that Plaintiff's claim regarding the existence of the threat was not credible. (Misconduct Hr'g Report, ECF No. 1-1, PageID.14) ("[I]t is not believed that he was threatened or in fear for his life."); (Misconduct Hr'g Report, ECF No. 1-1, PageID.15) ("Prisoner Blunt's statement is not believed . . . ."). The hearing officer faced the same difficulty that all of the defendants faced when gauging the credibility of Plaintiff's claim: he would not identify the individual who threatened him. Those factual determinations regarding Plaintiff's credibility were critical to Defendant O'Brien's determinations that the orders to return to general population were capable of being performed and did not pose a significant risk of substantial harm. *Id*.

In *Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013), the court held that a factual finding in a Michigan Department of Corrections major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action. The Sixth Circuit subsequently qualified that holding in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014). In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit considered all of those authorities and further clarified the limitations of the preclusion doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same

17

preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted).

In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan major misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id*. at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's factual finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id*. at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403–04 (6th Cir. 2014). The Court said that Peterson does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id*. at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id*.

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so— not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id*. at 404–05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question[ ] and remanded the case to the district court to consider the argument for the first time. *Id*. at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id*. The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id*. at 405.

*Maben*, 887 F. 3d at 259.

All of the factors identified in *Peterson*, *Roberson*, and *Maben*—including this Court's sense of justice and equity—support giving the hearing officer's factual finding preclusive effect. And the finding that Plaintiff's claim of a threat was not credible forecloses all of the claims he raises against the other Defendants.

18

Even if Plaintiff's claims were not factually eviscerated by the preclusive effect of the major misconduct hearing findings, his allegations would not state a claim. Where Plaintiff refused to permit the Defendants to evaluate the risk to Plaintiff's safety by refusing to name the person who communicated the threat, the facts alleged do not support the existence of an objectively reasonable fear of harm. Moreover, that same deficiency undercuts any inference that Defendants were subjectively aware of a risk and then failed to take reasonable measure to abate it.

Ultimately, Plaintiff's claims are revealed to be nothing more than conclusory allegations of unconstitutional conduct without specific factual allegations to support them. Such allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff fails to allege facts supporting the deliberate-indifference test, his Eighth Amendment claims against Defendants are properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  September 26, 2022                            /s/ *Maarten Vermaat*
                                                     Maarten Vermaat
                                                     United States Magistrate Judge